**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SYED RIZVI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3362 |
| | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In this nation of immigrants, the United States limits the number of new immigrants it will admit and allow to remain as permanent residents. When a prospective employer petitions the United States for a visa on behalf of an alien on the basis that the alien has valuable skills that the employer needs, the United States requires proof that the alien is qualified for the work by training and experience and that the prospective employer is able to pay the alien. The plaintiffs are Advanced Medical Automation Systems, Inc. ("AMAS"), the visa petitioner; Syed Rizvi, the visa beneficiary; and two of Syed Rizvi's family members who filed I-485 applications to adjust their residency status. They sued the United States Citizenship and Immigration Services ("USCIS") after it rejected AMAS's I-140 visa petition and denied the I-485 applications. The plaintiffs challenged the government's grounds for concluding that the prospective employer had not shown an ability to pay the proffered wage and that the applicant had failed to show his qualifications and experience for the proffered position. The plaintiffs asserted claims for wrongful denial of the I-140 petition and I-485 applications under the Administrative Procedure Act, 5 U.S.C. § 706, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

In previous rulings, this court granted the government's motion to dismiss the challenges to the denial of the I-485 applications for lack of subject-matter jurisdiction, granted the motion to dismiss the individual plaintiffs' challenges to the denial of the I-140 petitions for lack of standing, and granted the motion to dismiss the claims asserted against the Attorney General.[1]  The pending motion asks this court to dismiss AMAS's challenge to the denial of the I-140 petition.  The question is whether the USCIS abused its discretion when it denied AMAS's petition.  The parties have cross-moved for summary judgment.

Based on the motions, responses, and replies; the administrative record; oral argument by counsel; and the governing law, the court grants the government's motion for summary judgment and denies AMAS's motion.  This ruling resolves the remaining issue.  Final judgment is issued under separate order.

The reasons are explained in detail below.

## I.      Background

### A.      The Visa-Application Statutory Framework

The Immigration and Naturalization Act ("INA") regulates immigration by establishing procedures for the government to grant entry and permanent residency status to aliens meeting certain statutory criteria.  *See* 8 U.S.C. § 1154 (procedures for granting immigrant status); 8 U.S.C. § 1255 ( procedures for granting permanent resident status)).  The Secretary of Homeland Security and the USCIS administer the INA.  8 U.S.C. § 1103(a)(1); 8 C.F.R. § 2.1.

An alien may obtain an employment visa and a change of immigration status if he or she

---

[1]  Jeh Johnson took office as the Secretary of Homeland Security on December 23, 2013.  He is substituted as the Secretary of Homeland Security.  Fed. R. Civ. Pro. 25(d).

meets certain employment qualifications, including showing a permanent job offer as a professional

worker. *See* 8 U.S.C. § 1153(b). The INA limits the number of visa petitions that the USCIS may

approve each year for aliens seeking entry and change in status as a professional worker. 8 U.S.C.

§ 1153(b)(3)(A). Professionals are "[q]ualified immigrants who hold baccalaureate degrees and who

are members of the professions." 8 U.S.C. § 1153(b)(3)(A)(ii). The "professions" include, but are

not limited to, "architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or

secondary schools, colleges, academies, or seminaries." 8 U.S.C. § 1101(a)(32).

The process for a professional-worker visa proceeds in three steps. First, the government

certifies that a prospective employer needs a worker with certain qualifications and that it cannot

fill the need with a United States worker. Second, the prospective employer files an I-140 petition

for an employment-based visa, with documents showing that the noncitizen worker meets the

education, training, and experience requirements that the government had certified and that it can

pay the proffered wage that the government certified from a specified date. Third, if the USCIS

approves the I-140 petition, the alien worker files an I-485 Application to Register Permanent

Residence or Adjust Status to become a lawful permanent resident. At that time, certain members

of the alien worker's family may also apply to become lawful permanent residents based on the alien

worker's approved I-140 petition.

In the first step, the Department of Labor ("DOL") certifies to the Secretary of State and the

Attorney General that:

> (I) there are not sufficient workers who are able, willing, qualified .
> . . , and available at the time of the application for a visa and
> admission to the United States and at the place where the alien is to
> perform such skilled or unskilled labor, and
>
> (II) the employment of such alien will not adversely affect the wages

and working conditions of workers in the United States similarly
employed.

8 U.S.C. § 1182(a)(5)(A)(i)(I)–(II).  The alien's "prospective employer in the United States [must]

petition, on the alien's behalf, for labor certification" with the DOL.  *Masih v. Mukasey*, 536 F.3d

370, 373 & n.7 (5th Cir. 2008) (citing 8 U.S.C. § 1153(b)(3)(C) ("Labor certification required[.]

An immigrant visa may not be issued [to professionals] until the consular office is in receipt of a

determination made by the Secretary of Labor pursuant to the provisions of section 1182(a)(5)(A)

of this title.")).  To obtain the certification, the employer files Form ETA-750, which identifies the

"name of the particular alien the employer intends to employ; a description of the alien's

qualifications and the job; and documentation of the employer's attempts to recruit American

workers in compliance with Labor Department regulations. . . . An alien's place in line is determined

by his or her 'priority date,' that is, the date when the employer filed the application[.]"  *Kooritzky*

*v. Reich*, 17 F.3d 1509, 1511 (D.C. Cir. 1994) (internal citations omitted).  "The priority date of any

petition filed for classification [as a professional worker] under [8 U.S.C. § 1153(b)] . . . shall be the

date the request for [labor] certification was accepted for processing by any office within the

employment service system of the Department of Labor."  8 C.F.R. § 204.5(d) (defining priority

date).

In the second step, "[i]f the DOL approves the [certification,] the prospective employer [must]

file an I-140 petition with the [USCIS] for an employment-based visa for the alien."  *Masih*, 536

F.3d at 373 & n.8 (citing 8 C.F.R. § 204.5); *see also Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 127

(D.D.C. 2012) ("Once the certification is obtained, the employer must submit the certification along

with an I-140 visa petition to the USCIS on behalf of the non-citizen worker, who is known as the

'beneficiary' to the petition.").  "The employer must . . . submit documentation to show that the non-

citizen worker meets any educational, training, and experience, or other requirements directed by the labor certification [and] that it has the ability to pay the wage specified in the labor certification, *from the date on which the request for the labor certification was submitted* to the [DOL] until the non-citizen worker obtains lawful permanent resident status." *Vemuri*, 845 F. Supp. 2d at 127 (emphasis added); *see also* 8 C.F.R. § 204.5 (g)(1)–(2) (explaining the specific requirements for initial supporting documents and outlining the ability-to-pay requirement); *Id.* § 204.5 (l)(3)(ii)(C) (outlining other documentation for "professionals" including educational requirements).

"An employer bears the burden of showing that the job offer to the beneficiary is a realistic one. Thus the employer must show that the prospective employee meets the minimum job requirements . . . and that the employer has the ability to pay the wage specified in the Form ETA-750." *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 878 (E.D. Mich. 2010) (citing 8 C.F.R. § 204.5(g)(2); (l)(3)(ii)). "Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence." 8 C.F.R. § 204.5(g)(2). The petitioner must prove these requirements by a preponderance of the evidence. 8 U.S.C. § 1361.

In the third step, if the I-140 is approved, the "petition will be forwarded to the Department of State for the allotment of a visa number." *Patel v. Johnson*, – F. Supp. 2d –, –, 2014 WL 930823, at *2 (D. Mass. Mar. 11, 2014) (citation omitted). This allows the alien worker to "apply to adjust his or her immigration status to that of a lawful permanent resident by filing an I-485 Application to Register Permanent Residence or Adjust Status." *Vemuri*, 845 F. Supp. 2d at 127 (citing 8 U.S.C.

§ 1255(a)).  "[T]he USCIS cannot approve the I-485 application unless and until it approves the underlying I-140 visa petition." *Id.* This "third and final step of the process for aliens who . . . reside in the United States . . . would result in the adjustment of the alien's status to lawful permanent resident." *Masih*, 536 F.3d at 373–74.

If the process stops at the second step because the I-140 visa petition is not approved, "the employer may appeal the decision to the USCIS Administrative Appeals Office (the 'AAO')." *Patel*, 2014 WL 930823, at *2 (citing 8 C.F.R. § 103.3(a)(1)(ii)).  That is what occurred in this case.

### B.    The Evidence of the Plaintiffs' Immigration Filings

Syed Rizvi, a Pakistan citizen, came to the United States in May 2000 on a B1/B2 visa.  (CAR 41).  In September 2000, AMAS filed an I-129 petition for a nonimmigrant worker visa (the "H-1B Visa") on Rizvi's behalf.  (CAR 63).  The petition was approved and  Rizvi obtained his H-1B Visa on April 27, 2001.  (CAR 40).  Rizvi's wife, Shaheen Fatima, and his daughter, Amber, were issued H-4 Visas as the spouse and minor child of an H-1B Visa holder.  Shaheen and Amber entered the United States in August 2001.

In July 2002, AMAS filed Form ETA-750 to seek the DOL's certification of need for Rizvi's employment in the United States.  In the Form ETA-750, AMAS stated that it intended to hire Rizvi as a Software Engineer to "[p]rovide technical assistance and training to accounting/medical practice management system users, [i]nvestigate and resolve computer software problems for existing and prospective clients [and e]nhance existing software to add Image Storage and retrieval capabilities and EDI (electronic data interchange) capabilities to meet changing market conditions." (CAR 535, 537).  The position required a bachelor's degree in computer science and at least one year of computer-consultant work experience.  (CAR 535).  AMAS stated that it had an "open order with

6

[the] Texas Workforce Commission," that it had advertised the position, and that it had made internal job postings as evidence of its efforts to recruit United States workers.  (CAR 536).

On the application, Rizvi stated that he had attended the University of Karachi in Pakistan from July 1976 to May 1978, when he obtained a bachelor's degree in general science.  (CAR 537). He attended the school again from September 1989 to August 1991 and obtained a master's degree in computer science.  (*Id.*).  Rizvi stated that he worked as a computer programmer in Pakistan from March 1991 to July 1994, as a computer consultant in Pakistan from August 1994 to May 2000, and as a software engineer for AMAS from June 2000 to present.  (CAR 538).  The DOL issued the ETA-750 certification on June 6, 2007.  (CAR 673).  The specified salary was $56,659 annually.  (CAR 535).

In July 2007, AMAS filed Syed's I-140 petition.  (CAR 532).  The petition stated that the priority date was July 31, 2002.  (*Id.*)  The I-140 sought to classify Rizvi as "[a] professional (at a minimum, possessing a bachelor's degree or a foreign degree equivalent to a U.S. bachelor's degree)" under 8 U.S.C. § 1153(b)(3)(A)(ii).  (*Id.*).  AMAS stated that it had a gross annual income of $217,213 and a net annual income of $11,685 and that it would pay Rizvi $56,659 annually as a software engineer.  (CAR 533).  AMAS attached several documents to the I-140 to show  Rizvi's education, qualifications, past employment, and AMAS's ability to pay Rizvi the proffered wage. Rizvi's, his wife, and his daughter filed concurrent I-485 applications.  (CAR 5, set 2 at 5, set 3 at 5).

On September 27, 2008, the USCIS asked for more information from AMAS.  The USCIS stated that AMAS's "net income and net current assets for the years, 2003 through 2006, are less than the proffered wage" and that AMAS had failed to establish its ability to pay that wage for those years.

(CAR 648).  The USCIS required evidence of the salary paid during those years and a "copy of the corporation's annual federal tax returns, including copies of all schedules, or an audited financial statement, or an annual report" for 2007.  (*Id.*).  On October 18, 2008, AMAS responded with Rizvi's W-2 Wage and Tax Statement Forms for 2003 to 2007.  These showed that Rizvi was paid $37,324.86, $30,457.86, $35,833.20, $35,833.20, and $42,999.84 in those years.  (CAR 651–55).  AMAS's 2007 tax return showed that it had a net income of $9,166 and net assets of -$45,934.  (CAR 661, 666, 669).

The USCIS denied the I-140 petition on November 13, 2008.  According to the USCIS, AMAS had failed to show its ability to pay the proffered wage between 2003 and 2007.  (CAR 526–27).  AMAS had not paid the proffered wage from 2003 to 2007 and AMAS's net assets were not equal to or greater than the proffered wage for those years.

On December 11, 2008, AMAS appealed the denial of the I-140 petition to the AAO.  (CAR 247–48).  AMAS argued that it could currently pay the proffered wage and that it had been paying the proffered wage starting in 2007, the date that the DOL certified the ETA-750.  (CAR 248, 250).

The AAO requested more evidence.  (CAR 238).  The AAO required AMAS to file its federal tax returns or audited financial statements for the years 2008 to 2011, and Rizvi's W-2s for 2002 and 2008 to 2011.  (*Id.*).  The AAO noted that AMAS had filed multiple I-140 and I-129 petitions on behalf of multiple beneficiaries and further required AMAS to show that it had the ability to pay all of these beneficiaries their proffered wages.  (CAR 238–39).

The AAO also asked about Rizvi's education qualifications.  It noted that Rizvi had to possess all of the education training and experience specified on the ETA-750.  (CAR 240).  The AAO questioned the factual basis for concluding that Rizvi's foreign degrees were equivalent to a

8

bachelor's degree in computer science.  (CAR 241). The AAO independently reviewed the Electronic

Database for Global Education ("EDGE"), which indicated that a two-year master's degree was the

equivalent of a United States bachelor's degree.  Rizvi's transcript showed only the completion of

two semesters toward a master's degree.  (*Id.*).  The AAO requested evidence showing that Rizvi's

two semesters toward a master's degree was indeed equivalent to a United States bachelor's degree

in computer science.  (CAR 241–43).  Alternatively, the AAO permitted AMAS to show that

something other than a United States bachelor's degree was sufficient for the ETA-750.

In response to the AAO's requests, AMAS stated that Rizvi's W-2s for 2002 and 2003 no

longer existed.  AMAS submitted its 2011 tax return, Rizvi's W-2s for 2004 to 20011, W-2s for all

of its employees for whom it had filed I-140 or I-129 petitions on or after Rizvi's priority date, lists

of employees for whom AMAS had filed I-140 and I-129 petitions, and the total wages AMAS had

paid between 2005 and 2009.  AMAS also submitted a report by SDR Educational Consultants on

Rizvi's academic degrees.  It stated:

> The Masters of Science Program has a duration of one year after a
> Bachelor of Science Honours degree or two years after a Bachelor of
> Science Pass degree.  Mr. Rizvi was admitted into the one-year
> program more than twelve years after completing the pass degree.
> This indicates that additional credit for an additional year was
> recognized for studies and professional activity which is not
> documented herein[.]

(CAR 230).  The report recommended that for "professional purposes, [Rizvi] is eligible for a

position in computing in the same manner as a US bachelor degree holder.  This recommendation has

been the standard for US practice and is common to past and present published guidelines of the

professional organizations concerned with international education, specifically those of NAFSA and

AACRAO."  (CAR 231).

The AAO denied the I-140 petition for three reasons.  First, it found that AMAS failed to show its ability to pay the proffered wage starting on the priority date, when AMAS filed the ETA-750.  (CAR 81).  While AMAS showed an ability to pay the proffered wage from 2008 to 2011, it had failed to show the same ability from 2003 to 2007.  Second, the AAO concluded that Rizvi had not shown that he was qualified for the offered position because he had not submitted evidence showing that his Pakistani degrees were equivalent to a United States bachelor's degree.  (CAR 82).  Third, the AAO stated that Rivzi had not shown that he had the necessary work experience.  The evidence showed that he was employed as a "Systems Programmer," but the labor certification was "very specific [that] the one year of required experience must be as a software engineer, or in the alternate occupation of computer consultant."  (CAR 83).

AMAS, Syed Rizvi, Shaheen Fatima, and Amber Fatima filed this lawsuit after the AAO denied Rizvi's I-140.  AMAS argues that the USCIS abused its discretion by relying on AMAS's tax returns to determine its ability to pay Rizvi the proffered wage; that the USCIS erred in requiring AMAS to prove that it had the ability to pay from the date the labor certification was filed; and that USCIS erred in not crediting Rizvi's education and work-experience evidence.  The cross-motions for summary judgment followed.

## II.    The Applicable Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted).  "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary-judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving

party." *Mid–Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (internal quotation marks and alteration omitted).

### B.      Review of Agency Determinations

"It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). "A denial by the [USCIS] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (citing 5 U.S.C. § 706(2)(a)). While the district court's role is to ensure that USCIS engaged in "reasoned decision-making," the USCIS is "entitled to considerable deference in its interpretation of the governing statute." *Id.* (internal citations omitted). Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (quotation omitted). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.*

### III.    Discussion

### A.      Ability to Pay

The USCIS argues that its ability-to-pay analysis and decision followed the INA and implementing regulations. In response, AMAS contends that the USCIS acted arbitrarily by requiring proof of an ability to pay the proffered wage rather than the prevailing wage from 2003 to 2007; by using tax-return deficiencies to determine AMAS's ability to pay Rizvi's proffered wage; and by failing to consider other evidence of an ability to pay, such as bank statements. Each argument and response is analyzed below.

The INA's implementing regulations require a petitioner such as AMAS to prove that it had the ability to pay Rizvi from his priority date.  The regulations explain the evidentiary burden:

> (2) Ability of prospective employer to pay wage.  Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage.  The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence.  Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.  In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage.  In appropriate cases, additional evidence such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

8 C.F.R. § 204.5(g)(2).  The "USCIS has established three primary methods by which an employer can conclusively establish the ability to pay the proffered wage."  *Taco Especial*, 696 F. Supp. 2d at 878.  "First, an employer can show that he [has been] employing the alien beneficiary at a wage equal to that specified in the Form ETA-750."  *Id.* at 878–79 (citing USCIS Memorandum, *Determination of Ability to Pay under 8 CFR 204.5(g)(2)* (May 2004) (the "Yates Memorandum")).[2]  "Second, an employer can show that its yearly net income exceeds the expected yearly wage specified in the Form ETA-750."  *Id.* (citation omitted).  "Finally, an employer can show that its net current assets exceed the expected yearly wage specified in the Form ETA-750."  *Id.*

### 1.       The USCIS's Ability-to-Pay Analysis

---

[2]  The first method requires showing that the employer has been paying the proffered wage from the priority date through obtainment of lawful permanent residence.  Some courts, including the court in *Taco Especial*, have made statements suggesting that current payment of the proffered wage suffices despite evidence that the proffered wage had not been paid from the priority date.  In making those statements, the courts have cited the Yates Memorandum.  For the reasons explained in footnote 4, reliance on the Yates Memorandum for that proposition is misplaced.

The USCIS denied the I-140 petition on the ground that AMAS failed to prove its ability to pay the proffered wage.  Because the ETA-750 was filed on July 21, 2002, the USCIS determined that AMAS had to submit evidence that it could pay the proffered $56,659 wage per year from July 31, 2002 to the present.  (CAR 526).  The USCIS determined from AMAS's submissions that it had paid Rizvi the following amounts:

| Rizvi's W-2s: Wages Tips and Compensation ||
| **Year** | **Wage** |
| --- | --- |
| 2003 | $37,324.86 |
| 2004 | $30,457.86 |
| 2005 | $35,833.20 |
| 2006 | $35,833.20 |
| 2007 | $42,999.84 |

(*Id.*).  Based on this information, the USCIS found that it could not determine AMAS's ability to pay the proffered wage.

The USCIS then considered the "net income figure reflected on [AMAS's] federal income tax return, without consideration of depreciation or other expense" to determine whether AMAS could pay the proffered wage.  (*Id.*).  This method of calculating ability to pay is "well established by judicial precedent."  (*Id., citing Tongatuapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir. 1984); *Chi-Feng Chang v. Thornburgh*, 719 F. Supp. 532 (N.D. Tex. 1989); *Elatos Restaurant Corp. v. Sava*, 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986); *K.C.P. Food Co. v. Sava*, 623 F. Supp. 1080 (S.D.N.Y. 1985); *Ubeda v. Palmer*, 539 F. Supp. 547 (N.D. Ill. 1982), *aff'd*, 703 F.2d 571 (7th Cir. 1983)).  AMAS's tax returns showed the following:

14

| AMAS's Tax Returns Reflecting Net Income ||
|---|---|
| 2002 | $39, 931 |
| 2003 | $-286 |
| 2004 | $-4,094 |
| 2005 | $-9,820 |
| 2006 | $11,685 |
| 2007 | $9,166 |

(CAR 526, Pg. 3 of 3).[3]  The USCIS determined that the net income on the tax returns showed an

ability to pay for the year 2002.  Though that year reported net income of only $39,931, that amount

was more than the prorated proffered wage of $23,594.  The USCIS found, however, that "[t]he tax

returns for 2003 through 2007 [did] not show that [AMAS had] net income equal to or greater than

the proffered wage of $56,659."  (*Id.*).

Because the net income added to the amount paid to Rizvi from 2003 to 2007 did not equal

or surpass the proffered wage, the USCIS next considered AMAS's assets to determine whether "net

current assets," after offsetting liabilities, equaled or exceeded the proffered wage.  (*Id.*).  The USCIS

relied on Schedule L of AMAS's tax returns to determine net assets, which provided:

| Schedule L of AMAS's Tax Returns ||||||
|---|---|---|---|---|---|
| Year | 2003 | 2004 | 2005 | 2006 | 2007 |
| Current Assets | $17,506 | $11,847 | $1,956 | $18,451 | $21,620 |
| Current Liabilities | $71,748 | $58,301 | $51,566 | $60,551 | $67,554 |
| Net Current Assets | -$54,242 | $-46,454 | $-49,610 | $-42,100 | $-45,934 |

---

[3]  The certified administrative record has a pagination error.  The pagination goes from 526, omits
the pagination on the next page, and continues pagination on 527.  If properly paginated, this citation is to
527.

(*Id.*).  These net assets were not equal to or greater than the proffered wage.

Based on the amount that AMAS had paid Rizvi, AMAS's net income, and AMAS's net current assets, the USCIS concluded that AMAS had not established an ability to pay the proffered wage from 2003 through 2007.  "Therefore, the [I-140] petition seeking to classify [Rizvi] as a professional [could] not be approved and [was] denied."  (*Id.*).  AMAS appealed this decision to the AAO.

### 2.   The AAO's Ability-to-Pay Analysis

The AAO began its analysis by noting that 8 C.F.R. § 204.5 (g)(2) "requires that a petitioning entity demonstrate its *continuing* ability to pay the proffered wage beginning on the priority date." (CAR 80 (emphasis in original)).  AMAS had to "demonstrate its continuing ability to pay the proffered wage beginning on the priority date, which in this case [was] July 31, 2002."  (*Id.*). AMAS's ability to pay the "proffered wage in a specific year may suffice to show [AMAS's] ability to pay for that year, but [AMAS] must still demonstrate its ability to pay for the rest of the pertinent period of time."  (*Id.*).  The AAO did not credit the bank statements that AMAS submitted because the statements were not among the three types of preferred proofs under 8 C.F.R. § 204.5(g)(2).  The AAO noted that the regulation contemplates using additional materials in the ability-to-pay determination in appropriate cases, but concluded that AMAS "ha[d] not demonstrated why the documentation specified at 8 C.F.R. § 204.5(g)(2) [was] inapplicable or otherwise paints an inaccurate financial picture of [AMAS].  The amount of money in a bank account on a particular day does not show a sustainable ability to pay a proffered wage and no evidence was submitted to show that the bank statements showed additional funds that were not reflected on the tax returns."  (CAR 81).

The AAO noted that the USCIS could also "consider the overall magnitude of [AMAS's] business activities in its determination of the petitioner's ability to pay the proffered wage."  (*Id.*). For example, the USCIS might consider gross income instead of net income.  The USCIS could also consider factors such "as the number of years [AMAS had] been doing business, the established historical growth of [AMAS's] business, the overall number of employees, the occurrence of any uncharacteristic business expenditures or losses, [AMAS's] reputation within its industry, whether [Rizvi was] replacing a former employee or an outsourced service, or any other evidence that USCIS deem[ed] relevant to [AMAS's] ability to pay the proffered wage."  (*Id.*).

The AAO concluded that in this case, AMAS had not "submitted evidence establishing the historical growth of its business, the occurrence of any uncharacteristic business expenditures or losses, its reputation within its industry, or whether [Rizvi was] replacing a former employee or an outsourced service."  (*Id.*).  AMAS's "longevity and gross sales [were] not sufficient by themselves to overcome the shortfall in net income and net current assets over multiple years.  Thus, assessing the totality of the evidence submitted and under the circumstances as described . . . , the AAO [found] that [AMAS had] not shown by a preponderance of the evidence that it has the continuing ability to pay the proffered wage beginning on the priority date."  (*Id.*).

### 3.    AMAS's Arguments in this Court

#### a.    The Priority Date Issue

AMAS argues that the USCIS acted arbitrarily by requiring it to prove its ability to pay the proffered wage of $56,695 from the priority date instead of a current prevailing wage for those years. (Docket Entry No. 31 at 21–23).  AMAS relies on *Masonry Masters v. Thornburgh*, 875 F.2d 898 (D.C. Cir. 1989).  But, as the government argues, reliance on that case is misplaced because it

17

involved a different law and different regulatory requirements. The current regulations did not exist when that case was decided. The current regulations clearly require the employer-petitioner prove its ability to pay the proffered wage from the priority date through the time the employee-beneficiary obtains lawful permanent residence. 8 C.F.R. § 204.5(g)(2) ("Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence . . . .").

AMAS's policy arguments about the wisdom of, or justification for, that regulation are not a persuasive basis to reject the AAO's determinations. The AAO followed the clear and unambiguous regulatory requirements, *see United States v. Kay*, 359 F.3d 738, 742–43 (5th Cir. 2004) (discussing canons of statutory construction). Those requirements have a rational basis. "[A]llowing employers to file for labor certification at a time when they are unable to pay the offered wage would increase the incidence of unrealistic applications and thereby waste the [USCIS's] time." *Masonry Masters*, 875 F.2d at 902.

There is no basis to reverse the agency determination based on the application of the proffered wage and priority date requirements.

**b.      Tax Returns, Bank Statements, and Other Ability-to-Pay Evidence**

AMAS argues that the USCIS acted arbitrarily when it refused to consider all the evidence AMAS submitted to show its ability to pay and focused instead on the tax returns. As an initial matter, AMAS mischaracterizes the administrative record. The USCIS analyzed each of the three methods of preferred ability-to-pay proofs and the AAO considered documents AMAS provided

18

besides the tax returns.  In its analysis, the AAO concluded that AMAS failed to prove why the preferred methods of proof were inadequate to capture AMAS's cash flow and ability to pay, (CAR 80), then concluded that the other documents AMAS submitted were not probative of an ability to pay, (CAR 81–82).  AMAS claims that the AAO acted arbitrarily and capriciously by not considering bank statements and documents it asserts show the overall financial health of AMAS.  AMAS argues that USCIS decision to give more evidentiary weight to the net income reflected on the AMAS's tax return than the bank statements was irrational.

Under the deferential review that this court must use to evaluate agency decisions, the court cannot conclude that AAO's decision was arbitrary and capricious.  The agency's analysis of AMAS's ability to pay was not limited to tax returns, and its analysis of AMAS's financial health does not show an abuse of discretion.  The AAO gave three reasons why it did not give much evidentiary weight to the bank statements: (1) AMAS had not demonstrated why the preferred proofs painted an inaccurate financial picture; (2) bank statements show the amount in an account on a given date, and cannot show the sustainable ability to pay a proffered wage; (3) and AMAS failed to submit evidence that shows "that the funds reported on the petitioner's bank statements somehow reflect additional available funds that were not reflected on its tax return(s), such as [AMAS's] taxable income (income minus deductions) or the cash specified on Schedule L that was considered . . . in determining the petitioner's net current assets." (CAR 80–81).  The AAO gave a reasoned decision supported by the evidence on why it considered and gave weight to certain documents and found others not probative.  Contrary to AMAS's argument to this court, the agency clearly considered the documents, besides the tax returns, that AMAS submitted and reasonably concluded that they were not reliable evidence of AMAS's ability to pay and, based on the totality of the circumstances, did

19

not carry enough evidentiary weight to meet AMAS's preponderance of the evidence burden.

AMAS argues that the AAO was required to take a holistic approach by considering evidence other than the tax returns.  As an initial matter, the "holistic approach" that AMAS advocates in not required by the statute of its implementing regulations.  The petitioning employee may submit additional evidence beyond the three enumerated types of proof.  *See* 8 C.F.R. § 204.5(g)(2) ("In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, *may be submitted* by the petitioner or requested by the Service." (emphasis added)).  The agency may, but is not required to, consider it and credit such evidence.  *Id.*  The regulation, however, does require that the agency consider the three preferred ability to pay proofs.  *Id.* ("Evidence of this ability *shall be* either in the form of copies of annual reports, federal tax returns, or audited financial statements." (emphasis added)).

Additionally, the record shows that the agency considered the other evidence AMAS submitted and found that it was not probative of its ability to pay the proffered wage.  The AAO explained that the other evidence could be relevant but found AMAS's evidence and the reasoning offered to support it insufficient to meet its burden.

AMAS relies heavily on *Construction and Design Company v. United States Citizenship and Immigration Services*, 563 F.3d 593 (7th Cir. 2009) (Posner, J.).  In that case, the court noted that the petitioning company's "gross receipts in the year in question were almost $400,000 but its net income and net assets, according to its tax return and its balance sheet were close to zero." *Id.* at 595.  The court was "thrown by the government's brief [which] argue[d] that when . . . the employer's net taxable income and net assets are smaller than the alien's projected salary, the employer must show either that the salary is replacing a higher salary (or other cost) or that the employer usually makes

an adequate profit but was encountered by a 'rough patch[.]'" *Id.* The court roundly criticized the government's argument: it was "not the position of the Department of Homeland Security, ma[de] no sense, and was renounced by the government's lawyer in a post-argument submission," and it "missed the link between accounting entities and cash flow." *Id.* The court noted that "a company's tax returns are not a reliable basis for determining whether the company can afford to hire another employee." *Id.* at 596. In criticizing the agency's exclusive reliance on the tax returns, the court emphasized that the Department of Homeland Security starts with tax returns and balance sheets to "save time" but if those proofs are unclear, "the [*petitioner*] has to prove by other evidence its ability to pay the alien's salary." *Id.* The employer-petitioner always bears the burden of proof. Because it was "unclear where the extra money [the employee] was going to be paid . . . would be coming from," the court affirmed the district court's decision to affirm the USCIS's denial of the petition. *Id.* at 596–97.

The AAO considered all three methods of preferred proofs. It also noted other types of evidence that could be considered. Finally, it explained why it was not crediting AMAS's additional evidence. In the *Construction & Design* case, there was a significant disconnect between the income stated on the tax returns and the evidence of gross receipts. By contrast, in the present case, the agency found that AMAS failed to submit "evidence that the bank statements showed additional funds that were not reflected on the tax returns." (CAR 81). In the *Construction & Design* case, the government argued for an ability-to-pay test that the regulations did not provide and that the agency and even the government lawyer rejected. 563 F.3d at 595. No such argument is presented here. Finally, the *Construction & Design* opinion does not stand for the proposition that the agency must look at and give credit to bank records in every case.

21

The AAO considered the preferred proofs and AMAS's other documentation, including bank statements; the AAO did not consider only tax returns.  The AAO concluded that the additional materials AMAS submitted were not probative, that AMAS failed to show why the agency should go beyond the preferred types of proofs, and that AMAS failed to meet its burden of proving its ability to pay.  Though AMAS would have weighed the evidence differently and argues that different factual inferences can be drawn from the documents it submitted, the agency did not abuse its discretion in the analysis it conducted or the result it reached.  The AAO reached a reasoned decision supported by the evidence.  AMAS's arguments fail "because the [c]ourt may not 'weigh alternatives available to the agency and then determine which is the more reasonable.  As [USCIS's] treatment of [the bank statements and documentary submissions] was not counter to the evidence before the agency or so implausible that it could not be ascribed to a different view or the product of agency expertise, it was not arbitrary or capricious."  *Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 374 (S.D.N.Y. 2012); *see Delta Found., Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002) ("The court's role is not to weigh the evidence pro and con but to determine whether the agency decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." (internal quotation marks and citations omitted)).  Neither *Construction & Design,* 563 F.3d 593, nor *Taco Especial*, 696 F. Supp. 873, support a different result.[4]

---

[4] AMAS also relies on language from the USCIS Field Manual, which it describes as consistent with the Yates Memorandum.  The AAO rejected the argument, noting that "counsel's interpretation of the language in that memorandum is overly broad and does not comport with the plain language of the regulation at 8 C.F.R. § 204.5(g)(2) set forth in the memorandum as authority for the policy guidance therein.  The regulation requires that a petitioning entity demonstrate its *continuing* ability to pay the proffered wage beginning on the priority date.  If the USCIS and the AAO were to interpret and apply the Yates Memorandum as counsel urges, the regulatory language "would be usurped by an interoffice guidance memorandum without binding legal effect."  (CAR  80).  On the present record, the court cannot conclude that the AAO abused its discretion because an internal memorandum or field manual appears to suggest language contrary to the regulatory requirements.  AMAS also relies on *Just Bagels*, 900 F.Supp.2d at 374–

Accordingly, the AAO did not abuse its discretion in concluding that AMAS failed to show its ability to pay the proffered wage during the relevant periods.  The AAO's ability-to-pay analysis and conclusion is sufficient to grant summary judgment for USCIS.  The AAO gave three reasons for its affirming the denial of the I-140 petition: deficient proof of ability to pay; education; and experience.  The USCIS relied only on its determination that AMAS failed to prove that it had the ability-to-pay the proffered wage and did not discuss or analyze education or experience.  Because AMAS had to show that all three reasons the AAO gave for denying the petition were arbitrary and capricious, those three reasons were fully litigated in brief.  Because the court concludes that the AAO did not abuse its discretion in its ability-to-pay analysis and conclusion, it need not discuss the AAO's analysis of Rizvi's education and experience.

### B.    AMAS's *Ultra Vires* Argument

AMAS claims that 8 C.F.R. § 204.5(g)(2) is *ultra vires*.  The USCIS responded that the claim was unexhausted and unpreserved for APA review.  AMAS did not argue to the USCIS or the AAO that the regulation was *ultra vires*.  Instead, AMAS argued only that it had complied with the regulation.  At oral argument on the motion, it was all but conceded that this argument had been waived.  But review of the relevant law leaves it somewhat unclear whether AMAS had to raise every argument in front of the AAO.  The statute makes clear that a court lacks jurisdiction to review arguments not raised before the BIA, but it is less clear that the same applies to the AAO.  *Compare Canchola-Velez v. Filip*, 307 F. App'x 871, 872 (5th Cir. 2009) (unpublished) (citing *Wang v. Ashcroft*, 260 F.3d 448, 451–53 (5th Cir. 2001)); *but see Rivera-Durmaz v. Chertoff*, 456 F. Supp.

---

75.  That case, however, affirmed the USCIS's rejection of bank statements for the same reasons that the AAO rejected them in this case.  *Id.*

2d 943, 952 (N.D. Ill. 2006) ("The sole express reference to exhaustion in the Immigration and Nationality Act itself pertains only to removal orders."), *with Patel v. Johnson*, 2014 WL 930823, at *12–*14 (considering procedural deficiencies in AAO's review process).

Nonetheless, courts have persuasively rejected the *ultra vires* argument that AMAS asserts. *See Woody's Oasis v. Rosenberg*, No. 1:13-cv-367, 2014 WL 413503, at *3 (W.D. Mich. Feb. 4, 2014) ("The Court finds this long-standing precedent persuasive, and agrees that the USCIS has the authority to investigate an employer's ability to pay").  The INA requires the Secretary of Homeland Security to "establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions; and perform such other acts as he deems necessary for carrying out his authority" to administer and enforce the statute.  8 U.S.C. § 1103 (a)(1), (3).  Form ETA-750 and the regulations that it relies upon are permissible constructions of the statute.  *See Perez-Pimental v. Mukasey*, 530 F.3d 321, 324 (5th Cir. 2008) ("However, if the statute is silent or ambiguous with respect to the specific issue, we ask only whether the agency's answer is based on a permissible construction of the statute.").  This argument provides no basis for the relief AMAS seeks.

## IV.    Conclusion

The court grants the USCIS's motion for summary judgment and denies AMAS's motion for summary judgment.  Final judgment is entered by separate order.

SIGNED on August 4, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge